UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------X
MAHUE MACK,

                Plaintiff,

    -against-

THE CITY OF NEW YORK,
and DESHAWN ZITHS

                Defendants.
------------------------------X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ FEB 1 0 2012 ★
BROOKLYN OFFICE

CV 12-675

COMPLAINT

KORMAN, J.

PLAINTIFF DEMANDS
A TRIAL BY JURY

AZRACK, M.J.

Plaintiff Mahue Mack, by his attorneys, Reibman & Weiner, as and for his Complaint, hereby alleges as follows, upon information and belief:

### PARTIES, VENUE and JURISDICTION

1. At all times hereinafter mentioned, plaintiff Mahue Mack was an adult male resident of Kings County, in the State of New York.

2. At all relevant times hereinafter mentioned, defendant City of New York ("New York City"), was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

3. At all relevant times hereinafter mentioned, defendant Deshawn Ziths (Tax No. 939737), was an adult male employed by the City of New York as a member of the NYPD. Defendant Ziths is sued herein in his official and individual capacities.

4. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, and 42 U.S.C. § 1983.

5. Venue is properly laid, pursuant to 28 U.S.C. Section 1391, et seq. in the Eastern District of New York, where the plaintiff and defendant City of New York reside, and where the majority of the actions complained of herein occurred.

6. That plaintiff timely served a Notice of Claim on the municipal defendant and complied with all conditions precedent to commencing an action under state law.

7. At least thirty days have elapsed since service of plaintiff's Notice of Claim and adjustment and payment thereof has been neglected or refused.

8. That the within action has been initiated within one year and ninety days of the happening of the events of which plaintiff complains.

## RELEVANT FACTS

9. As of November 13, 2010, plaintiff Mack was legally married to Lateesha Mack. Plaintiff and Ms. Mack were estranged from each other and engaged in litigation over the custody of their infant child, referred to herein as F.M.

10. On November 13, 2010, at approximately 5:30 p.m., plaintiff was lawfully present inside the lobby area of the NYPD station hourse in the 79 Precinct, where he was waiting to picking up his son from Ms. Mack, pursuant to an Order of Visitation issued by the New York State Family Court ("OV").

11. On this day, Ms. Mack was late dropping off plaintiff's son at the precinct pursuant to the OV, so plaintiff sent a text message to her asking how much longer she would be. Upon information and belief, she responded, in sum and substance, that she

would notify claimant when she arrived. She gave no time frame for when she expected to arrive.

12. In fact, at this time, Ms. Mack was in another room of the precinct with Defendant Ziths.

13. After plaintiff had been at the station house for about 30 minutes, and despite the absence of any wrongdoing, defendant Ziths came from another room of the precinct, handcuffed plaintiff, and informed plaintiff that his wife had accused him of texting her in violation of a limited Temporary Order of Protection ("OP").

14. In fact, neither the OP nor the OV barred Mr. Mack from contacting Ms. Mack. The OV allowed for communications concerning F.M., and the limited OP did not bar communications between the Macks. Instead, the OP simply directed that plaintiff "[r]efrain from assault, stalking, harassment, aggravated harassment, menacing, reckless endangerment, disorderly conduct, intimidation, criminal mischief, threats, or any criminal offense against Lateesha Mack."

15. At no time had plaintiff engaged in any of the behaviors prohibited by the OP, nor had he engaged in any other illegal conduct.

16. When defendant Ziths approached plaintiff in handcuffs, plaintiff asked to show defendant Ziths the court orders to show him that his texts were permissible.

17. Defendant Ziths refused to look at the paperwork and then, despite the absence of any evidence of wrongdoing on the part of plaintiff, formally arrested Mr. Mack.

18. The decision to arrest plaintiff was objectively unreasonable under the

3

circumstances as the defendant refused to review the alleged texts or the court orders that plaintiff was accused of violating, even though the texts and court orders were immediately available.

19. Plaintiff was then held in handcuffs at the station house for several hours, before he was transferred to Kings County Central Booking, where was held for many more hours.

20. Ziths forwarded information to the Kings County District Attorney's Office ("KCDA") in order to initiate the filing of criminal charges against Mr. Mack.

21. Plaintiff was then arraigned approximately 24 hours after his arrest on a criminal complaint containing unsubstantiated claims sworn to by Ziths, and charged criminally with Aggravated Harassment in the Second Degree and Criminal Contempt in the Second Degree.

22. The factual allegations made by Ziths were misleading, incomplete and inaccurate. They also failed to incorporate the plain language of the court orders in question in order to create the appearance that plaintiff had violated their terms, although he clearly had not.

23. It was objectively unreasonable for defendants to commence the plaintiff's prosecution as there was no evidence that plaintiff had engaged in any criminal conduct or violated the terms of either court order.

24. Moreover, as plaintiff and Ms. Mack were clearly estranged and in the middle of litigation over the custody of F.M., it was incumbent on the defendants to verify

4

Ms. Mack's allegations, if possible, to ensure that Ms. Mack did not manipulate the NYPD in order to gain an advantange in the civil litigation. Certainly, Ziths had to be aware of the possibility that Ms. Mack was fabricating her claims of harassment in order to punish Mr. Mack and to obtain an unfair advantage in the litigation.

25. All of the alleged texts and court orders were readily available to Ziths and so he could have easily verified the terms of the court orders and the actual conduct engaged in by Mr. Mack to determine if a crime had been committed.

26. Ziths refused to do so. This refusal, under the circumstances was facially unreasonable.

27. After his arraignment, plaintiff was required to appear in court on five separate occasions.

28. On May 16, 2011, the KCDA moved to dismiss all of the charges against plaintiff. The motion was granted and the case terminated in plaintiff's favor.

29. At no time did there exist any basis to subject plaintiff to any arrest or search, nor could any of the defendants have reasonably believed such an arrest or search was appropriate or necessary.

30. At no time prior to or during the encounter was there sufficient legal cause to believe that plaintiff was engaged in any suspicious or unlawful activity.

31. At no time prior to or during the encounter was there probable cause to arrest plaintiff.

32. At all times relevant herein, the defendant was acting within the scope

of his employment, and his acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

## FIRST CAUSE OF ACTION

33. Plaintiff repeats the allegations contained in paragraphs "1" through "32" above as though stated fully herein.

34. Defendant Ziths willfully and intentionally seized, searched, detained, and arrested plaintiff without probable cause, and maliciously caused him to be prosecuted without a reasonable basis to believe such cause existed.

35. By so doing, the individual defendant subjected the plaintiff to false arrest and imprisonment, unlawful searches of person and property, denial of due process, deprivation of a fair trial, and malicious use and abuse of process, and thereby violated the plaintiff's rights under the United States Constitution.

36. By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of his constitutional rights.

## SECOND CAUSE OF ACTION

37. Plaintiff repeats the allegations contained in paragraphs "1" through "36" above as though stated fully herein.

38. Defendant City of New York was responsible for ensuring that reasonable and appropriate levels of supervision were in place within and/or over the

NYPD.

39. Defendant had actual or constructive knowledge that there was inadequate supervision over and/or within the NYPD with respect to its members' abuse of their authority, use of excessive force, abuse of arrest powers, and other blatant violations of the United States Constitution and the rules and regulations of the NYPD. Despite ample notice of inadequate supervision, defendants took no steps to ensure that reasonable and appropriate levels of supervision were put in place to reasonably ensure that NYPD members engaged in police conduct in a lawful and proper manner, including their use of their authority as law enforcement officers with respect to the general public, including, and specifically, the plaintiff herein.

40. The defendant City of New York deliberately and intentionally chose not to take action to correct the chronic, systemic, and institutional misuse and abuse of police authority by its NYPD employees, and thereby deliberately and intentionally adopted, condoned, and otherwise created through deliberate inaction and negligent supervision, an NYPD policy, practice, and custom of utilizing illegal and impermissible searches, arrests, and detentions, and the manufacturing of evidence, in the ordinary course of NYPD business in flagrant disregard of the state and federal constitutions, as well as the Patrol Guide, up to and beyond the plaintiff's arrest.

41. All of the acts and omissions by the individual defendants described above were carried out pursuant to overlapping policies and practices of the municipal defendant in their capacities as police officers and officials pursuant to customs, policies,

usages, practices, procedures and rules of the City and the NYPD, all under the supervision of ranking officers of the NYPD

42. The aforementioned customs, practices, procedures, and rules of the City and the NYPD include, but are not limited to, the following unconstitutional practices:

   a. Using excessive force on individuals, including but not limited to those who have already been handcuffed;

   b. Failing to supervise, train, instruct and discipline police officers and encouraging their misconduct;

   c. Discouraging police officers from reporting the corrupt or unlawful acts of other officers;

   d. Retaliating against officers who report police misconduct; and

   e. Failing to intervene to prevent the above-mentioned practices when such intervention is reasonably available.

43. The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in the following, non-exhaustive list of civil actions:

   a. *Thompson v. City of New York,* 10-CV-3603 (ARR) (SMG) (E.D.N.Y.)

   b. *Lotorto v. City of New York,* 10-CV-1223 (ILG) (JMA) (E.D.N.Y.);

   c. *Zabala v. City of New York,* 37711/2010 (Sup. Ct., Kings Co.);

   d. *Ashe v. City of New York,* 09-CV-9696 (GBD) (THK) (S.D.N.Y.);

   e. *Long v. City of New York,* 09-CV-9216 (AKH) (S.D.N.Y.);

   f. *Moise v. City of New York,* 09-CV-9855 (DC) (JLC) (S.D.N.Y.)

   g. *Taylor-Mickens v. City of New York,* 09-CV-7923 (RWS) (SD.N.Y.)

8

    h.   *Carmody* v. *City of New York*, 05-CV-8084 (HB), 2006 U.S. Dist. LEXIS 83207;

    i.   *McMillan* v. *City of New York*, 04-CV-3990 (FB) (RML) (E.D.N.Y.);

    j.   *Avent* v. *City of New York*, 04-CV-2451 (CBA) (CLP) (E.D.N.Y.):

    k.   *Smith* v. *City of New York*, 04-CV-1045 (RRM) (JMA) (E.D.N.Y.);

    l.   *Powers* v. *City of New York*, 04-CV-2246 (NGG) (E.D.N.Y.);

    m.   *Dotson* v. *City of New York*, 03-CV-2136 (RMB) (S.D.N.Y.);

    n.   *Nonnemann* v. *City of New York*, 02-CV-I0131 (JSR) (AJP) (S.D.N.Y.);

    o.   *Richardson* v. *City of New York*, 02-CV-3651 (JG) (CLP) (E.D.N.Y.);

    p.   *Barry* v. *New York City Police Department*, 01-CV-10627 (CBM) (S.D.N.Y.);

    q.   *Walton* v. *Safir*, 99-CV-4430 (AKH) (S.D.N.Y.);

    r.   *White-Ruiz* v. *The City of New York*, 93-CV-7233 (DLC) (MHD) (S.D.N.Y.);

    s.   *Ariza* v. *City of New York*, 93-CV-5287 (CPS) (E.D.N.Y.);

44.   In an Order dated November 25, 2009, in *Colon v. City of New York*, 09-CV-0008 (E.D.N.Y.), the Hon. Jack B. Weinstein stated:

> Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal

evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration -- through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department -- there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.

45. Furthermore, more than half the time that the Civilian Complaint Review Board refers substantiated complaints against officers to the NYPD for disciplinary action, the NYPD either simply issues a verbal warning or drops the charges altogether.

46. It is therefore clear that the municipal defendant has not only tolerated, but actively fostered a lawless atmosphere within the NYPD and that the City of New York was deliberately indifferent to the risk that the inadequate level of supervision would lead to the violation of individuals' constitutional rights in general, and caused the violation of plaintiff's rights in particular.

47. By reason thereof, defendant has violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of his constitutional rights.

### THIRD CAUSE OF ACTION

48. Plaintiff repeats the allegations contained in paragraphs "1" through "47" above as though stated fully herein.

49. Plaintiff was subjected to false arrest, false imprisonment, unlawful searches and malicious prosecution by the defendants.

50. At no time did the defendants have any legal basis for arresting or imprisoning plaintiff, commencing criminal process, or searching plaintiff, nor was there any reasonable basis to believe said conduct set forth herein was lawful, reasonable, or otherwise appropriate.

51. The defendants are therefore liable to plaintiff for false arrest, false imprisonment, unlawful searches, and malicious prosecution by the defendants.

52. By reason thereof, defendants have caused plaintiff to suffer emotional and physical injuries, mental anguish, the loss of his constitutional rights, and unlawful incarceration.

WHEREFORE, the plaintiff demands judgment against defendants jointly and severally as follows:

    i. on the causes of action one through three, actual and punitive damages in an amount to be determined at trial;

    ii. statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. §1988 and New York common law, disbursements, and costs of this action; and

    iii. such other relief as the Court deems just and proper.

Dated: Brooklyn, New York
February 8, 2012

Reibman & Weiner
Attorneys for Plaintiff
26 Court Street, Suite 1808
Brooklyn, New York 11242
718-522-1743

_____
Michael Lumer, Esq. (ML-1947)

_____
Jessica Massimi, Esq. (JM-2920)