| UNITED STATES DISTRICT COURT | NOT FOR PUBLICATION |
| EASTERN DISTRICT OF NEW YORK | |

------------------------------------------------------------------------X
MAHUE MACK,

       Plaintiff,      **MEMORANDUM & ORDER**

  - against -          No. 12-CV-675 (ERK) (JMA)

THE CITY OF NEW YORK,
and DESHAWN ZITHS,

       Defendants.
------------------------------------------------------------------------X

KORMAN, J.:

  Mahue Mack brought suit against the City of New York and Deshawn Ziths, a New York City police officer, pursuant to 42 U.S.C. § 1983. He claims his constitutional rights were violated when he was arrested in the lobby of the 79th precinct, where he was waiting to meet his estranged wife and pick up his son for an arranged visit, on November 13, 2010. He was arrested on suspicion of violating an active Temporary Order of Protection that required Mr. Mack to refrain from "assault, stalking, harassment… intimidation" and other problematic behavior towards his estranged wife, Lateesha Mack. (Defs.' Mot., Ex. C.)

  The Temporary Order of Protection ("OP") was entered simultaneously with a Temporary Order of Visitation ("OV") concerning the Macks' young son by a judge of the New York Family Court on November 4, 2010. (Mack 56.1 Stmt. ¶ 4.) Under the terms of the OV, Ms. Mack had primary custody of the child, and Mr. Mack was entitled to weekend visitation from 5PM Saturday until school began on Tuesday morning. (*Id.* at ¶ 5.) The OV provided that Ms. Mack would bring the child to the 79th precinct on Saturday evenings to meet Mr. Mack. (*Id.* at ¶ 6.) As quoted above, the OP was limited to a prohibition of harassing or threatening conduct; it did not prohibit communication between Mr. and Ms. Mack.

1

On the date of his arrest, Mr. Mack arrived at the 79th precinct shortly after 5PM to pick up his child for a scheduled weekend visitation. (*Id.* at ¶ 11.) Mr. and Ms. Mack corresponded via text message, as follows:

> Mahue Mack, 5:13: "2min"
> Lateesha Mack, 5:15: "Let me know when [you're] there."
> Mahue Mack, 5:16: "[You] should be here [at] 5 like [you] text me Boo"
> Lateesha Mack, 5:18: "Jus[t] text me when [you're] there."
> Mahue Mack, 5:21: "[You] [are] unstable and still attached Lateesha. Bring our son to the precinct and quit playin[g] malicious games like the Judge said."
> Lateesha Mack, 5:22: "I'm here dude."
> Mahue Mack, 5:22: "VERY GOOD GIRL!"
> Mahue Mack, 5:26: "The Judge said [you] [are] malicious"
> Mahue Mack, 5:32: "Let me speak to [my son] pl[ease]."

(Mack Decl. at ¶¶ 11-20.)

While this conversation unfolded, Ms. Mack was present in the precinct. Earlier that afternoon, she filed a domestic incident report with the assistance of Officer Deshawn Ziths. (Pl.'s Decl. of Counsel, Ex. 1.) Her statement of allegations reads:

> Since the last court date with Mr. Mahue Mack, I have been receiving emails and text message[s] that are very disturbing. I currently have an order of protection against Mr. Mack. This has been in place since 2008. Mr. Mack knows that he is not to contact me via phone, but he is doing it anyway. I am convinced that he is not going to stop and may go even further i.e. showing up [at] my front door. Mr. Mack has been harassing me since we separated in 2007. Since November 4, 2010, Mr. Mack has been texting me or emailing me approximately every three hours. The last text message came from him [at] 9:54am today.

(*Id.*) The statement is dated November 13, 2010, at 3:45PM, over an hour before Mr. Mack arrived at the precinct. (*Id.*)

After Mr. Mack sent the final message, Officer Ziths approached Mr. Mack and asked if he was there to pick up his son. (Mack Decl. at ¶21.) Officer Ziths then asked if Mr. Mack had been texting his estranged wife and whether he knew about the active OP. (*Id.* at ¶ 22.) Mr.

2

Mack responded that he had texted his wife, was aware of the OP, and that the OP did not prohibit communication between them. (*Id.*) Mr. Mack offered to show the OP, OV, and text messages to Officer Ziths, who refused to look at them and placed Mr. Mack under arrest. (*Id.* at ¶¶ 23-24.) Mr. Mack was charged with aggravated harassment in the second degree under New York Penal Law ("NYPL") § 240.30 and criminal contempt in the second degree under NYPL § 215.50. (Compl. At ¶ 21.) Mr. Mack claims he was imprisoned for approximately a day before his arraignment and release without bail. (*Id.*; Mack Dep. at 20.)

Both charges against Mr. Mack were dismissed on motion of the Kings County District Attorney on May 26, 2011. (Pltf.'s Decl. of Counsel, Ex. 3.) Mr. Mack filed the instant suit on February 10, 2012, asserting constitutional claims under § 1983 for false arrest, false imprisonment, malicious prosecution, and malicious abuse of process. Defendants moved to dismiss for failure to state a claim on May 7, 2012. An order was entered on October 10, 2012, converting defendants' motion into one for summary judgment.

## Discussion

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether there is a genuine issue of material fact, the court must resolve all ambiguities, and draw all inferences, against the moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Mr. Mack advances four claims for violations of his constitutional rights that he argues entitle him to relief under 42 U.S.C. § 1983. I address each in turn, as well as the issues of qualified immunity and municipal liability.

1. False Arrest

A § 1983 claim of false arrest fails if the arresting officer had probable cause to arrest the plaintiff. *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004). "Probable cause to arrest exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id.* (internal quotation and citation omitted). In determining the existence of probable cause, the court should look to the totality of the circumstances and all those facts "available to the officer at the time of the arrest and immediately before it." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir. 1996).

Here, Officer Ziths arrested Mr. Mack on the basis of the complaint filed by Lateesha Mack, in which she claimed, under threat of criminal sanctions for lying or misrepresentation, that Mr. Mack was repeatedly contacting her in a harassing fashion and that his behavior caused her to fear that he may go "even further," implying a physical threat. Mr. Mack has not alleged any facts that would have caused Officer Ziths to doubt Lateesha Mack's statement—other than the obvious situation of estrangement between her and Mr. Mack, which is presumably present in all cases involving Orders of Protection. Officer Ziths also apparently verified the existence of the Order of Protection, as he included its docket number, expiration, and a brief description of its requirements in the domestic incident report completed by Mrs. Mack. The Second Circuit has held that police officers in a nearly identical situation had probable cause to arrest a suspect for criminal contempt and harassment based on a written complaint made by his estranged wife.

4

*Fulton v. Robinson*, 289 F.3d 188 (2d Cir. 2002); *see also Sunan Yan v. City of New York*, No. 11-5460-cv, 2013 WL 381443, at *1 (2d Cir. Feb 1, 2013) ("[I]n determining that there was probable cause for Yan's arrest, defendants Sergeant Sheridan and Officer Zuno were entitled to credit the statements made by the purported crime victim and his brother… and were not required to accept or investigate Yan's and Liu's contrary statements.")  The existence of a valid Order of Protection against Mr. Mack also strongly suggests the presence of probable cause. *See Carthew v. County of Suffolk*, 709 F. Supp. 2d 188, 197 (E.D.N.Y. 2010) ("In cases involving arrests for violating a protective order, courts in this circuit have found that the arresting officer's awareness of the protective order is itself a significant factor in establishing probable cause.")

Mr. Mack emphasizes the fact that Officer Ziths failed to inspect the OP and OV as well as the text messages stored on Mr. Mack's phone before arresting him.  However, "an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause."  *Panetta v. Crowley*, 460 F.3d 388, 395-96 (2d Cir. 2006).  As the Second Circuit has noted, "[o]nce officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury.  Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence."  *Id.* (quoting *Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir. 1989)).  Along similar lines, Mr. Mack argues that it was unreasonable for Officer Ziths to arrest him because the OP did not prohibit communication with his estranged wife.  This is beside the point.  Lateesha Mack's complaint did not center on the fact that Mr. Mack was texting her at all; rather, she described a pattern of continuous texts and emails that she described as "very disturbing," and which she claimed caused her to worry about the actions that Mr. Mack might take in the future.  Such

conduct would violate the OP's command to "[r]efrain from assault, stalking, harassment… [and] intimidation," and constitutes probable cause for Mr. Mack's arrest.

2. False Imprisonment

Under New York law, a finding of probable cause defeats a claim for false imprisonment as well as a claim for false arrest, since the existence of probable cause renders a suspect's post-arrest confinement privileged. *See Singer v. Fulton County Sheriff*, 63 F.3d 110, 118-119 (2d Cir. 1995). Because Officer Ziths had probable cause to arrest Mr. Mack, as discussed above, Mr. Mack's false imprisonment claim fails.

3. Malicious Prosecution

To establish a claim for malicious prosecution, a plaintiff must demonstrate: "(1) commencement or continuance of a criminal proceeding, (2) lack of probable cause, (3) existence of malice, and (4) termination in plaintiff's favor." *DiBlasio v. City of New York*, 102 F.3d 654, 657 (2d Cir. 1996). Because Officer Ziths had probable cause to arrest Mr. Mack, as discussed above, Mr. Mack cannot prevail on his claim for malicious prosecution unless he can establish that his prosecution continued despite discovery by the police of "mitigating facts to vitiate the probable cause." *Carson v. Lewis*, 35 F. Supp. 2d 250, 263 (E.D.N.Y. 1999). Mr. Mack has failed to do so. He asserts in his complaint merely that Officer Ziths "forwarded information" to the Kings County District Attorney's office to "initiate the filing of criminal charges," but the record contains no other evidence of any actions taken by Officer Ziths after he arrested Mr. Mack. (Compl. At ¶ 20.) There is no indication that Officer Ziths discovered any additional facts to cast doubt on the credibility of Lateesha Mack's complaint or the existence of probable cause before he handed off the case to the District Attorney's office.

4. Malicious Abuse of Process

"In New York, a malicious abuse of process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994). Although Officer Ziths employed legal process against Mr. Mack by arresting him and forwarding the information relevant to the arrest to the prosecutor, thus initiating the procedure that led to Mr. Mack's arraignment, there is no evidence that Officer Ziths acted with the intent to do harm to Mr. Mack "without excuse," let alone that he acted with the intent of obtaining some collateral objective.

5. Qualified Immunity

As explained above, Mr. Mack's claims fail for the primary reason that Officer Ziths had probable cause to arrest Mr. Mack. Even if these circumstances were insufficient to establish probable cause, however, Officer Ziths would certainly prevail on his defense of qualified immunity. Qualified immunity will shield an arresting officer from a suit for damages if the officer can establish that "arguable probable cause" existed at the time of the arrest. "Arguable probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)). For the reasons set out above, it was eminently reasonable for Officer Ziths to believe that probable cause existed for Mr. Mack's arrest based on Lateesha Mack's written statement and the existence of a valid Order of Protection against Mr. Mack; thus, he is entitled to qualified immunity.

6. <u>Municipal Liability</u>

Mr. Mack did not suffer any constitutional harm due to the actions of Officer Ziths. Because Mr. Mack cannot establish that he was deprived of any constitutional right, he certainly cannot establish that a "municipal policy or custom" caused such a deprivation, as is required for recovery against a municipality under § 1983. *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985); *see also Monell v Dep't of Social Services*, 436 U.S. 658, 690-91 (1978).

**Conclusion**

For the reasons stated above, defendants' motion for summary judgment is granted.

**SO ORDERED:**

Brooklyn, New York
February 11, 2013

*Edward R. Korman*

Edward R. Korman
Senior United States District Judge